```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CITY OF WARREN POLICE AND FIRE
RETIREMENT SYSTEM, Individually and
on Behalf of All Others Similarly Situated,                         MEMORANDUM
                                                                    AND ORDER

                         Plaintiff,

            - against-                                              CV 17-4412 (SJF) (AKT)

ZEBRA TECHNOLOGIES CORPORATION
ANDERS GUSTAFSSON and MICHAEL C.
SMILEY,

                         Defendants.
----------------------------------------------------------------X
```

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.   PRELIMINARY STATEMENT**

This putative securities fraud class action is brought on behalf of all persons who purchased Zebra common stock between November 4, 2014 and November 9, 2014. *See* Consolidated Class Action Complaint ("CAC") [DE 23] ¶ 1. Lead plaintiff, the City of Warren Police and Fire Retirement System ("Plaintiff"), alleges that defendant Zebra Technologies Corporation ("Zebra" or the "Company") and certain former Zebra executive officers ("the Individual Defendants") (collectively, "Defendants") violated sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5, promulgated thereunder. *See generally id.* Specifically, Plaintiff asserts that following Zebra's acquisition of Motorola Solutions Inc.'s Enterprise division ("Enterprise"), Defendants made misleading statements of material fact in SEC filings, press releases, and earnings calls regarding, *inter alia*, the costs associated with integrating Enterprise into the Company. *See id.* ¶¶ 2, 4, 83. Before the Court at this time is Defendants' motion, pursuant to 28 U.S.C. § 1404(a), to transfer this action

to the Federal District Court for the Northern District of Illinois.  *See* Defendants' Notice of Motion [DE 40].[1]  For the following reasons, the motion is GRANTED.

## II.    BACKGROUND

### A.    Plaintiff's Claims

The following facts are derived from the CAC and are provided solely for background.

Plaintiff brings this putative class action against Zebra, Zebra's Chief Executive Officer ("CEO") Anders Gustafsson, and Zebra's former Chief Financial Officer ("CFO") Michael C. Smiley for Defendants' alleged violations of federal securities law.  Although the class has not yet been certified, Plaintiff seeks to represent "all persons who purchased Zebra common stock between November 4, 2014 and November 9, 2015, inclusive" (the "Class Period") and who were damaged thereby.  CAC ¶¶ 1, 4.

Zebra is a publicly traded company based in Lincolnshire, Illinois which "designs, manufactures, and distributes a wide range of products that capture and move data, including, mobile computers, barcode scanners and imagers, RFID readers, and specialty printers for barcode labeling and personal identification."  *Id.* ¶ 22.  The Company trades on the NASDAQ under the ticker symbol "ZBRA" and has more than 53 million shares of common stock issued

---

[1]    Although various courts have handled transfer of venue motions differently as to the pretrial reference authority of magistrate judges, most district courts in the Second Circuit agree that motions to change venue are non-dispositive and therefore are properly within the jurisdiction of magistrate judges.  *See Wilson-Folden v. Macy's, Inc.*, No. 15-CV-618, 2015 WL 13545903, at *2 (E.D.N.Y. May 29, 2015) (treating change of venue motion as non-dispositive); *D'Amato v. ECHL*, No. 13-CV-646, 2015 WL 2151825, at *3-8 (W.D.N.Y. May 7, 2015) (same); *Kasparov v. Ambit Texas, LLC*, 12-CV-3488, 2016 WL 10749156, at *3 (E.D.N.Y. Mar. 10, 2016) (citing majority view that magistrate judge has authority to grant non-dispositive relief in a motion to transfer venue); *Skolnick v. Wainer*, No. 13-CV-4694, 2013 WL 5329112, at *2 n.1 (E.D.N.Y. Sept. 20, 2013) (collecting cases).  The Court agrees with the majority view and decides the instant motion by Memorandum and Order.

and outstanding. *Id.* ¶ 22. According to Zebra's webpage, Zebra employs approximately 7,000 employees throughout 115 offices across 50 countries worldwide. *See id.* ¶ 40.

As relevant here, on April 15, 2014, Zebra issued a press release, which it filed with the SEC on Form 8-K, announcing that it would acquire Motorola Enterprise for $3.45 billion in cash, funded "through a combination of $3.25 billion of new capital raised with debt and $200 million of cash on hand." *Id.* ¶ 44. By acquiring Enterprise, Zebra more than tripled in size, taking "on a company significantly larger than itself at the time." *Id.* ¶¶ 46-47. According to Plaintiff, despite this massive undertaking, and the substantial debt taken on in connection with it, Defendants pitched the "significant synergies to be realized," making positive statements about integrating Enterprise into the Company and the future savings the Company would realize as a result. *See id.* ¶¶ 48, 51-52. However, Plaintiff alleges that following the acquisition of Enterprise:

> Defendants [] failed to disclose that any 'cost synergies' or 'cost savings,' realized from the acquisition in the short run would largely be offset by hundreds of millions of dollars in incremental spending necessary to complete the acquisition and to remedy severe and undisclosed problems encountered during the migration from Motorola-supported IT systems to those of Zebra's.

*Id*. ¶ 4.

Plaintiff alleges that Defendants made misleading statements in SEC filings and press releases — and on earnings calls — about the success and progress of the Company's integration efforts despite knowing, or recklessly disregarding, among other things, (1) the significant costs associated with completing the acquisition, (2) substantial and costly problems associated with integration and data migration, and (3) deficiencies in Zebra's internal controls over financial reporting. *See generally* CAC. Essentially, Plaintiff maintains that Defendants' statements

3

following the acquisition artificially inflated the market price of Zebra's common stock and ultimately harmed Zebra shareholders. *Id.* ¶ 10.

B.     **Facts Relevant to the Motion to Transfer[2]**

Plaintiff is located in Michigan. *See* Defendants' Memorandum of Law in Support of Motion to Transfer Venue ("Defs.' Mem.") [DE 41] at 4; Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue ("Pl.'s Mem.") [DE 43] at n.6. Zebra is incorporated in the State of Delaware and maintains its headquarters and principal executive offices in Lincolnshire, Illinois. *See* August 13, 2018 Declaration of Michael Kim, Zebra Corporate Treasurer, in Support of Motion to Transfer Venue ("Kim Decl.") [DE 42] ¶ 2. Individual Defendants Anders Gustafsson, who has served as Zebra's CEO since September 4, 2007, and Michael C. Smiley, who served as Zebra's CFO from May 1, 2008 through November 16, 2016, both maintained their offices at the Company's headquarters in Lincolnshire, Illinois at all relevant times. *Id.* ¶ 3. Zebra's Investor Relations, Finance, Sales and Marketing, and Legal departments are all based at the Company's headquarters in Lincolnshire, Illinois. *See id.* ¶¶ 4-7.

According to Zebra's Corporate Treasurer, Michael Kim, all Zebra SEC filings and press releases are prepared at, and issued from, Lincolnshire, Illinois, including those prepared and issued during the Class Period. *Id.* ¶¶ 8-9. In addition, each of the quarterly earnings conference calls during the Class Period originated from the Company's Lincolnshire, Illinois headquarters. *Id.* ¶ 10. In fact, all statements and filings cited in the CAC were prepared, made, or issued from Lincolnshire, Illinois, except for statements made at the November 11, 2014 Robert W. Baird &

---

[2]     The following facts are derived from the parties' memoranda of law and supporting affidavits.

4

Co. Inc. Industrial Conference, which took place in Chicago, Illinois. *See id.* ¶¶ 8-10. With respect to Zebra's records, the Company prepares and maintains its corporate books and records in Lincolnshire, Illinois, as well as its publicly reported consolidated financial statements and financial records. *Id.* ¶ 12. In addition, a majority of the financial documents and data underlying the Company's financial statements and financial records are also located at the Company's headquarters. *Id.*

Zebra's Enterprise Visibility & Mobility unit ("EVM"), formerly Enterprise, which is central to this action, is located in Holtsville, New York, where Enterprise maintained its headquarters prior to the acquisition. *See* CAC ¶¶ 22. EVM's operation consists of a large laboratory and warehouse facility and employs 800 people. *Id.*; Pl.'s Mem. at 1, 6. Zebra's head of EVM, Bill Burns, has worked out of Holtsville, New York since being named Senior Vice President of EVM in June of 2015 and reports directly to CEO Anders Gustafsson. *See* Pl.'s Mem. at 2; September 7, 2018 Declaration of David A. Rosenfield in Support of Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue ("Rosenfield Decl.") [DE 44], Ex. 2 (June 24, 2015 Press Release regarding hiring of Bill Burns). Zebra also maintains an unrelated facility, the former Hart Systems operations, in Hauppauge, New York. *See* Pl.'s Mem. at 6.

### III. DISCUSSION

#### A. Applicable Law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." *Publicker Indus.,*

5

*Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992); *New York v. Next Millenium Realty, LLC*, 06-CV-1133, 2016 WL 11189177, at * 2 (E.D.N.Y. June 1, 2016). "Deciding a § 1404(a) motion to transfer venue requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of the parties and witnesses, and the interest of justice, a transfer is appropriate." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 28–29 (E.D.N.Y. 2014) (citation and quotation marks omitted).

### B. Analysis

With respect to the first part of the inquiry, venue of an Exchange Act claim is exclusively governed by 15 U.S.C. § 78aa, irrespective of the general venue provisions of 28 U.S.C. § 1391. *See Mazuma Holding Corp.*, 1 F. Supp. 3d at 29 (citing *Blass v. Capital Intern. Security Group,* No. 99–5738, 2001 WL 301137, at *2 (E.D.N.Y. Mar. 23, 2001). Here, Plaintiff does not contest that venue would have been proper in the Federal District Court for the Northern District of Illinois. Indeed, the corporate Defendant Zebra is headquartered in the Northern District of Illinois and transacts business therein.

With respect to the second part of the inquiry, the following factors are relevant to determining if transfer is appropriate:

> (1) plaintiff's choice of forum, (2) the convenience to witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties to the suit, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, (9) trial efficiency, and (10) the interest of justice, based on the totality of circumstances.

*Mazuma Holding Corp.*, 1 F. Supp. 3d at 29 (quoting *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.,* 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012); *New York Marine and Gen'l Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d. 102, 112 (2d. Cir. 2010); *see also In re*

*Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (listing the factors for consideration under the second step of the transfer venue analysis). No one factor is determinative. *See Mitchell v. City of New York,* 12 Civ. 5933, 2013 WL 5942236, at *2 (S.D.N.Y. Nov. 6, 2013). In addition, "[t]he moving party carries the burden of making out a strong case for transfer by clear and convincing evidence." *Mazuma Holding Corp.*, 1 F. Supp. 3d at 29 (E.D.N.Y. 2014) (internal quotation marks and citation omitted).

As relevant here, while there is "'no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered,' such transfers to the issuer's home district are routine 'as a practical matter.'" *In re AtheroGenics Sec. Litig.,* No. 05 Civ. 00061, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006) (quoting *In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 418 F. Supp. 2d at 168–69) (E.D.N.Y. Feb. 28, 2006)).

The Court will consider each of the ten factors articulated above in determining whether transfer is warranted here.

### 1. *Plaintiff's Choice of Forum*

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 170 (quoting *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 659 (S.D.N.Y.1998)). "However, when the plaintiff does not reside in the chosen forum, and the plaintiff's chosen forum has no material connection to the facts or issues of the case, that weight is diminished." *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 170 (quoting *Cali v. East Coast Aviation Servs., Ltd.,* 178 F. Supp. 2d 276, 292 (E.D.N.Y.2001)). Further, a plaintiff's forum choice is "a less significant consideration

in a . . .class action than in an individual action." *Warrick v. General Elec. Co.*, 70 F.3d 736, 741 n.7 (2d Cir. 1995). Where a plaintiff class is widely dispersed, a plaintiff's forum choice is given less deference. *See In re Geopharma, Inc.*, No. 04 CIV. 9463, 2005 WL 1123883, at *1 (S.D.N.Y. May 11, 2005) (citation omitted). However, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 28 (2d Cir. 2002).

Here, Plaintiff does not reside in New York and Plaintiff seeks to represent a class dispersed throughout the United States. Further, the only connection of this case to New York is the fact that Enterprise was based in Holtsville, New York at the time of the acquisition and EVM has maintained operations in Holtsville, New York ever since. Significantly, however, it is undisputed that nearly all the statements at issue in the CAC, which form the basis of Plaintiff's securities fraud claims, were made, prepared, or issued from Lincolnshire, Illinois. In these circumstances, Plaintiff's choice of forum is afforded diminished weight.

### 2. *Convenience to Witnesses*

"The convenience to non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of venue." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 168 (citation omitted). Defendants have identified several non-party witnesses located in the Northern District of Illinois, including Joachim ("Joe") Heel, the Senior Vice President of Global Sales, and Mike Terzich, Zebra's Chief Administrative Officer, both of whom are mentioned in the CAC. Both Heel and Terzich maintain their offices at the Company's headquarters in Lincolnshire, Illinois. *See* Kim Decl. ¶ 13. Defendants also assert that other current or former Zebra employees who might have material knowledge of the preparation and publication of the filings and documents at issue work at the Company's

headquarters or are otherwise located in Illinois. *See* Defs. Mem. at 9. Defendants underscore that the employees responsible for preparing and issuing the statements at issue, and who could testify regarding those statements, are located in Illinois, since the Company's Finance, Sales, Marketing, Investor Relations, and Legal Departments are all located at the Company's headquarters. *See* Defendants' Reply Memorandum of Law in Further Support of Motion to Transfer ("Defs.' Reply Mem.") at 4-5. Defendants maintain that based on this information, the Northern District of Illinois would be more convenient for these witnesses.

Plaintiff asserts that by identifying only witnesses in the Northern District of Illinois, Defendants overlook the central focus of Plaintiff's allegations — that there were severe and undisclosed problems with the integration of Enterprise, which was located in Holtsville, New York. *See* Pl.'s Mem. at 9. As such, Plaintiff argues that the case requires substantial discovery from individuals who worked at Zebra in the Eastern District of New York. *See id.* For these witnesses, the Eastern District of New York would be a more convenient venue. The Court points out, however, that the Amended Complaint does not identify any Zebra employees located in the Eastern District of New York.

To establish that the location of witnesses supports transfer, "the movant must supply an affidavit identifying witnesses and the probable subject matter of their testimony." *Pall Corp. v. PTI Techs., Inc.*, 992 F. Supp. 196, 201 (E.D.N.Y. 1998) (citation omitted); *see also EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a)."). Defendants have not clearly specified the key witnesses to be called or the probable content of their testimony. And it is certainly possible that Plaintiff will

9

call witnesses from the Eastern District of New York who will be inconvenienced if the case is transferred. Consequently, notwithstanding Defendants' assertion that the relevant Zebra personnel are located in Lincolnshire, Illinois, in the absence of an affidavit specifically identifying the witnesses and the probable subject matter of their testimony, the Court finds that this factor is neutral as it relates to the transfer analysis. *See EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 352 (finding this factor neutral where Defendant failed to provide an affidavit specifically identifying probable trial witnesses and the content of their testimony).

### 3. The Location of Relevant Documents and Ease of Access to Sources of Proof

"Securities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which are in the defendants' possession." *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 170 (citation omitted). That is likely the case here. Defendants maintain that "nearly all of the documents relevant to this case are located or maintained by custodians at Zebra's headquarters in Lincolnshire, Illinois." Defs.' Mem. at 9. This factor is counterbalanced, however, to the extent that documents relating to the undisclosed problems with the integration of Enterprise are located in Holtsville, New York. "[I]t has been repeatedly noted that in an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." *Mazuma Holding Corp.*, 1 F. Supp. 3d at 30–31 (internal quotations marks and citation omitted). "Moreover, neither party has presented any evidence regarding the volume of the records and documents that they will produce or the cost of transporting those documents to the relevant forum." *Id.* (quoting *Farberware Licensing Co. LLC v. Meyer Mktg. Co., Ltd.,* 09 CIV. 2570, 2009 WL 1357956, at *2 (S.D.N.Y. May 14, 2009)). On the whole, this factor does not favor either New York or Illinois as the appropriate venue and is neutral.

### 4. *Convenience to the Parties*

Although Plaintiff may contend that the Eastern District of New York is the more convenient forum, the Court notes that Plaintiff is not a resident of New York. And, significantly, Plaintiff is simply a representative of a putative class which will likely be "geographically dispersed throughout the United States." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 169 (quoting *Blass*, 2001 WL 301137, at *5). As such, some, if not most, of the class will be inconvenienced whether the case proceeds in New York or Illinois. And, one could argue, since Plaintiff is a resident of Michigan, Illinois is a more convenient forum.

On the other hand, Defendants are all located in the Northern District of Illinois. As such, Defendants have a persuasive argument that the Northern District of Illinois is the more convenient venue for them. Defendants' claim is compelling since one of the Individual Defendants, Anders Gustafsson, is the Company's CEO, and a trial in the Eastern District of New York could disrupt the Company's operations. *See In re Hanger Orthopedic Grp., Inc. Sec. Litig.,* 418 F. Supp. 2d at 169; *see also In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 401-03 (S.D.N.Y. 1998) (noting that "defendants' presence at trial is important" since "trials in securities class actions focus almost entirely on the defendants' conduct" and transferring case to avoid "significant disruption to [defendants'] operations"). In these circumstances, this factor weighs in favor of transfer.

### 5. *The Locus of Operative Facts*

Plaintiff's claims are based on Defendants' alleged misrepresentations and omissions, all of which — the parties agree — originated in Illinois. Significantly, "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where

11

they are received." *Mazuma Holding Corp.*, 1 F. Supp. 3d at 31 (citing *Purcell Graham, Inc. v. National Bank of Detroit,* No. 93 Civ. 8786, 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994) (finding transfer appropriate where material acts and omissions underlying the plaintiff's complaint occurred in transferee district)). Plaintiff argues that since the entire case concerns the integration of Enterprise, which was headquartered in Holtsville, New York, the conduct underlying the statements at issue likely took place in Holtsville. *See* Pl.'s Mem. at 5. As such, Plaintiff maintains that consideration of the locus of operative facts weighs against transfer or, at the very least, is neutral. *Id.* However, the Northern District of Illinois is the "logical situs for resolution of this dispute," *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d at 404, because it is the forum where "the allegedly false and misleading statements were prepared, approved, and issued." *City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp.*, No 13 CIV. 5158, 2012 WL 5656086, at * 2 (S.D.N.Y. Oct. 9, 2013). The fact that some of the challenged statements concern the integration of Enterprise, which is based in Holtsville, does not change the fact that the statements and omissions originated in Illinois. Defendants' connections to the Eastern District of New York are not sufficient to overcome this litigation's substantial connections to Illinois. *See id.* (granting defendants' motion to transfer from New York to Wisconsin despite plaintiff's connections to New York, since the corporate and individual defendants were located in Wisconsin and the allegedly false statements underlying plaintiff's securities fraud claims were made in Wisconsin).

Here, the statements at issue were prepared, issued, or made in Lincolnshire, Illinois, where relevant personnel worked and where Zebra's headquarters were located. Though EVM operates out of Zebra's facility in Holtsville, New York, which is one of 122 Zebra facilities worldwide, only 800 employees worked in the Holtsville facility at the time of the merger – less

than 20 % of the total number of Enterprise employees who joined Zebra upon completion of the acquisition. Further, based on the nature of this action, the conduct which occurred in Illinois is the focus of the litigation, not the activity which occurred in Holtsville, New York.

As such, this factor weighs in favor of transferring venue to the Northern District of Illinois.

### 6. *Availability of Process to Compel the Attendance of Unwilling Witnesses*

Neither party sets forth with any detail the witnesses they intend to call at trial. Defendants generally state that the Zebra employees with information related to the statements at issue work, or are based, in Illinois. Plaintiff states that it requires substantial discovery, and presumably testimony, from individuals who worked in Holtsville, New York. As such, the Court is not in a position to evaluate the degree to which compulsory process is necessary in this action. And, in any case, Defendants have failed to present evidence demonstrating that any witnesses would be unwilling to testify in New York. *See Brozoski v. Pfizer, Inc.,* No. 00 CIV. 4215, 2001 WL 618981, *4 (S.D.N.Y. June 6, 2001) (citing *Soto v. Bey Transportation Co.,* No. 95 Civ 9329, 1997 WL 407247 (S.D.N.Y. July 21, 1997) (holding that where a defendant fails to present evidence demonstrating that its witnesses would be unwilling to testify, the ability to compel the attendance of witnesses should not enter the transfer-of-venue analysis)). Indeed, Defendants' non-party witnesses are presumably current Zebra employees for whom Defendants could arrange travel to New York.

The Court notes that at least two practical considerations mitigate the impact of this factor. First, "even if witnesses declined to testify in New York, deposition testimony is a viable alternative." *Brozoski*, 2001 WL 618981, at *4 (citing *Orb Factory, Ltd v. Design Science Toys,* 6 F. Supp. 2d 203, 209 (S.D.N.Y.1998) (holding that transfer is unwarranted where deposition

testimony is an available alternative to live testimony)). Second, "securities-fraud class actions regularly settle and, therefore, rarely go to trial; thus, the issue of unwilling trial witnesses is largely academic." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d at 170. Overall, the Court finds this factor neutral.

### 7. *The Relative Means of the Parties*

"Where an apparent disparity exists between the parties, such as when an individual sues a large corporation, the court should consider the relative means of the parties." *Blass,* 2001 WL 301137, at *6. Here, Plaintiff does not argue that its means are so limited as to require such consideration. Therefore, this factor does not affect the Court's analysis.

### 8. *Forum's Familiarity with Governing Law*

Plaintiff raises federal claims with which this Court and the Northern District of Illinois are equally familiar. As a result, this factor does not favor either New York or Illinois as the proper venue.

### 9. *Trial Efficiency and the Interests of Justice*

"In considering trial efficiency, a district court may pay some mind to relative levels of docket congestion in the prospective transferor and transferee districts." *In re Global Cash Access Holdings, Inc. Sec. Litig.,* 08 CV. 3516, 2008 WL 4344531, at *7 (S.D.N.Y. Sept. 18, 2008). With respect to the interests of justice, there is nothing in the record to indicate that a transfer is required by factors other than those discussed above. Accordingly, this factor is neutral.

### 10. *Summary*

The instant action is a typical securities-fraud case. It is a putative class action brought against Zebra and senior Zebra officers based on alleged misrepresentations in, and omissions

from, statements originating at Zebra's Illinois headquarters. Moreover, most of the Individual Defendants, whose conduct is perhaps most essential here are based in Illinois. These factors all weigh in favor of transfer.

Plaintiff argues that this case ought to remain in the Eastern District of New York because Enterprise, the acquisition of which is at the essence of this case, is based here in the Eastern District of New York. Pl.'s Mem. at 5. Plaintiff maintains that the statements at issue in this litigation "largely concerned conduct that was very likely taking place in Holtsville, New York." *Id.* at 6.

Whatever the basis of the statements at issue, this case remains a securities-fraud action, which requires Plaintiff to prove that Defendants knowingly or recklessly disregarded the costs associated with the integration of Enterprise and, as a result, issued statements that were false or misleading. As articulated above, the locus of these operative facts is Illinois. Moreover, transfers of securities fraud class actions to the district where the issuer is headquartered are "routine." *See In re Hanger*, 418 F. Supp. 2d at 168.

## IV. CONCLUSION

Based on the foregoing analysis of the relevant factors, the Court finds that Defendants have made the requisite showing that transfer is warranted. Defendants' motion is GRANTED and the Clerk of Court is directed to transfer the case, including all actions consolidated thereunder, to the Northern District of Illinois.

**SO ORDERED.**

Dated: Central Islip, New York
      August 23, 2019

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge