IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF WARREN POLICE AND
FIRE RETIREMENT SYSTEM,
Individually and on Behalf of
All Others Similarly
Situated,

               Plaintiff,

       v.

ZEBRA TECHNOLOGIES
CORPORATION, ANDERS
GUSTAFSSON, and MICHAEL C.
SMILEY,

               Defendants.

Case No. 19 C 5782

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Defendants Zebra Technologies Corporation, Anders Gustafsson, and Michael C. Smiley's Motion to Dismiss (Dkt. No. 69) is granted.

## I. BACKGROUND

On April 15, 2014, Zebra Technologies Corporation ("Zebra") announced that it had agreed to acquire the enterprise business of Motorola Solutions, Inc. ("Motorola"). (Second Am. Compl. ("SAC") ¶ 37, Dkt. No. 65.) Both companies are involved in what is known as "the internet of things." This concept is described as a network of physical objects that are embedded with technologies for the purpose of connecting and exchanging data with other physical

objects over the internet. It includes systems of interrelated computing devices with the ability to transfer data over a network without human interaction. The pre-acquisition business of Zebra involved asset intelligence and tracking though the use of barcodes, imagers, and radio frequency identification readers. (*Id.* ¶ 33.) The business acquired from Motorola consisted of enterprise visibility and mobility which involved mobile computing and data capture, e.g., the ability to provide a customer with knowledge of its products such as the quantity and their location. (*Id.*)

## A. The Complaint

The Plaintiff, the City of Warren Police and Fire Retirement System, allegedly purchased Zebra common stock during the proposed class period of November 4, 2014, to November 9, 2015. (*Id.* ¶ 21.) The individual Defendants are senior officers that led Zebra during the class period. Collectively with Zebra, the individual Defendants are referred to as Defendant or Defendants. According to the Complaint, the SEC report filed by Zebra for the acquisition stated that the purchase price was $3.45 billion in cash and acknowledged that Zebra was acquiring a company significantly larger than itself, i.e., Zebra had 2,600 employees and $1 billion in revenues while Motorola had 4,500 employees and $2.5 billion in revenues. (*Id.* ¶ 39.) In a conference call announcing the acquisition, Zebra said that it expected earnings per share to

increase during the first year and return on invested capital to exceed the cost of the acquisition in three years. (*Id.* ¶ 38.) On a November 4, 2014, earnings call after the completion of the acquisition, Zebra stated that it expected cost synergies resulting from the acquisition would amount to $150 million. (*Id.* ¶ 44.)

Unfortunately, according to the Complaint, the integration of Motorola enterprise into Zebra was met with numerous problems. (*Id.* ¶ 47.) Specifically, Zebra struggled to extract the relevant data from the Motorola enterprise system and integrate that data into the Zebra system. (*Id.*) For example, the sales organizations of the two companies were very different in systems and compensation which made the integration more costly than originally thought. (*Id.* ¶ 52.) Thus, on November 10, 2015, a year after the completion of the acquisition, Zebra announced that the complexity of the two systems was greater than it had anticipated and that it expected the cost to complete the overall integration would be approximately $180 million to $200 million through 2017. (*Id.* ¶ 71.)

Moreover, according to the Complaint, on August 11, 2015, Zebra announced that it had missed its previously issued gross margin guidance for the second quarter of 2015. (*Id.* ¶ 112.) The guidance issued on May 13, 2015, was 45.5% to 46,5%. (*Id.* ¶ 64.) On August 11, 2015, Zebra announced its second quarter gross margin

came in at 44.2%. The gross margin miss was 160 basis points, or 1.6% below that of the previous quarter. (*Id.* ¶¶ 66–67.) However, the three other guidance metrics, net sales, non GAPP earnings per share, and adjusted EBITDA, had been met. (*Id.*) Zebra's explanation for the shortfall was "purchase accounting and one-time accounting adjustments" relating to the acquisition of the Motorola enterprise. (*Id.*)

The announcement of the failure to achieve the gross margin guidance for the 2015 second quarter resulted in an immediate 24% drop in Zebra share price. (*Id.* ¶ 68.) The announcement that Zebra would need to spend between $180 and $200 million to complete the integration resulted in the share price dropping 8% further. (*Id.* ¶¶ 71–73.) It is these share price drops that form the basis for this putative securities fraud class action. The Plaintiff seeks to bring this action on behalf of a putative class of purchasers of Zebra common stock who purchased shares between the dates of November 4, 2014, the date the acquisition was closed, and November 9, 2015, the date Zebra disclosed that it would need to spend upwards of $200 million to complete the integration.

As stated in the Complaint, while Zebra emphasized to the market the significant cost synergies that were to be obtained through the acquisition and assured investors the integration of the two entities was "progressing as planned," it was experiencing substantial problems with integration during the class period.

- 4 -

(*Id.* ¶¶ 95–96.) The Defendants continued their rhetoric even as the company was experiencing problems internally. Anonymous confidential former employees described the process as having "many challenges" and that parts were "brutal." (*Id.* ¶ 50.) According to the Complaint, many of the problems experienced were the result of understaffing, which led to the hiring of additional personnel at increased cost, as well as the continuing obligation to pay Motorola for contractual services. (*Id.* ¶¶ 51 & 53.)

### B. The Motion to Dismiss

Defendants have filed a Motion to Dismiss based on three contentions. First, Defendants claim they advised the market at the time of the acquisition that integration would be difficult and the benefits to be gained required Defendants to not "stub [their] toe" while pursuing the integration.(11/4/2014 Zebra Earnings Call at 12, Mot., Ex. 2, Dkt. No. 71-2.) Defendants next contend that Plaintiff has failed to allege any present tense statement that was either false or misleading and that the many of the statements relied upon by Plaintiff were forward-looking statements that are protected by the safe harbor provision of the Private Securities Litigation Reform Act ("PSLRA"). Finally, Defendants argue that Plaintiff does not plead a "strong inference of scienter" with regard to any of the alleged false statements or omissions as required by the PSLRA.

## II. DISCUSSION

The Complaint challenges two general categories of alleged misstatements by Defendants: present tense statements concerning the status of integration, and forward-looking statements relating to anticipated cost synergies from the acquisition and the gross margin guidance for the second quarter of 2015.

To state a Rule 10 b-5 claim for securities fraud, a plaintiff must allege: (1) a material misrepresentation, or omission by a defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). The fraud claim must satisfy not only Rule 9(b)'s particularity standard, but also the requirement of Section 21D(b)(2) that securities fraud complaints must "state with particularity facts giving rise to a strong inference that they acted with the required state of mind." 15 USC § 78u-4(b)(2)(A). The required state of mind refers to the element of scienter, and, in the PSLRA context, means "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk of the statement is false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). The PSLRA also requires that any complaint alleging a material misrepresentation or omission must also "specify each

statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 USC § 78u-4(b)(1); *Cornielsen*, 916 F.3d at 599. A complaint that fails to do so shall be dismissed. 15 USC § 78u-4(b)(3)(A).

Plaintiff's chief complaints are (1) that Defendants falsely claimed that the acquisition was on track to achieve short-term substantial savings arising from cost synergies, which was belied by Defendants missing their second quarter gross margin guidance, and (2) that Defendants failed to disclose the extent of the problems arising from integrating the two companies until their November 10, 2015, disclosure that the integration would require substantial incremental spending (upwards of $180 million to $200 million) to complete the integration.

Defendants respond that they made clear from the beginning to the investing public that the integration would be "a significant undertaking and will require significant attention from our management," and that integration might not be successful or may "be more costly than presently contemplated." (2014 Annual Form 10-K at 22, Mot., Ex. 8, Dkt. No. 71-8.) Furthermore, the Defendants argue that the significant cost savings due to synergies resulting from the acquisition is separate from the one-time costs arising from the acquisition. The Complaint does not allege that Zebra failed to achieve the significant cost savings contemplated at the time of the acquisition. Instead, Plaintiff alleges the

increased costs expended the savings. Although Defendants admit this may have happened when the costs spiraled upward during integration, this does not take away the ultimate value of the acquisition. The presence of one-time costs, while unfortunate, do not make the acquisition a mistake or belie the underlying expectation that the merger would result in savings due to synergies.

Defendants also argue that the failure to meet the second quarter gross margin cannot be actionable because of the PSLRA's safe harbor provision. If a statement is identified as forward-looking and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to vary materially from those in the forward-looking statement, it will not support a securities fraud claim. 15 U.S.C. § 78u-5(c)(1)(A)(i). Statements of future economic performance include revenues, income, and earnings forecasts. *Id.* § 78u-5(i)(1)(A).

To prove the false and misleading nature of Zebra's statements, Plaintiff relies in part upon information provided by two anonymous former employees, as well as the actual resulting costs. The false statements or omissions listed in the Complaint as occurring during the class periods are contained in paragraphs 82 through 106 of the Second Amended Complaint and are as follows:

> We will continue to drive momentum and maximize the strength of the new Zebra, as we create the most formidable provider of asset intelligence solutions

worldwide. At the same time, we are committed to creating shareholder value through achieving $150 million in cost synergies. We expect $100 million of these savings to be realized in operating expenses and $50 million in cost of goods, as we streamline the purchasing of common components and rationalized vendors. Our current plan calls for exiting 2015 with [$50] million to $75 million in captured synergies on a run-rate basis, with the remainder achieved the following year. (SAC ¶ 82; 11/4/2014 Earnings Call at 7.)

By the time of closing, we successfully completed a complex cut-over to the [enterprise resource planning ("ERP")] system supporting the enterprise business in a short amount of time. Our hard work ahead of the close enabled us to take orders and ship products at volume from day one. We have already made significant progress on integrating the enterprise business. (SAC ¶ 84; 11/4/2014 Earnings Call at 7.)

Operating expenses for the third quarter increased 52.2% primarily due to acquisition and integration costs related to the acquisition of the Enterprise business of Motorola Solutions, which was announced in April 2014. Zebra completed the transaction on October 27, 2014. (SAC ¶ 86; 3Q2014 Form 10-Q at 27, Mot., Ex. 3, Dkt. No. 71-3.)

We may be unable to effectively integrate the Enterprise business into our existing business after the Acquisition. (SAC ¶ 88; 3Q2014 Form 10-Q at 36.)

We cannot assure you that we will be able to integrate the Enterprise business effectively into the Company. The integration of the Enterprise business, which is significantly larger than our existing business, into our operations will be a significant undertaking and will require significant attention from our management. The Acquisition, with an approximate enterprise value of $3.45 billion, is significantly larger than prior acquisitions we have completed and will significantly increase the size of our operations, increase our number of employees and operating facilities and expand our geographic scope. There can be no assurance that we will be able to successfully integrate the Enterprise business, or if such integration is successfully accomplished, that such integration will not be more

costly than presently contemplated. There can also be no assurance that we can successfully manage the combined business due to our greatly increased size and scope. If we cannot successfully integrate and manage the Enterprise business within a reasonable time following the Acquisition, we may not be able to realize the potential and anticipated benefits of the acquisition, which could have a material adverse effect on our business, financial condition, operating results, cash flows and growth prospects. (SAC ¶ 88; 3Q2014 Form 10-Q at 36.)

We may be unable to realize the expected growth opportunities and cost savings from the Acquisition. (SAC ¶ 88; 3Q2014 Form 10-Q at 36.)

In connection with the integration of the Enterprise business into our existing operating structure, we will seek to realize growth opportunities, along with cost savings. We currently expect to realize cost savings of approximately $150 million per year to be fully achieved by 2017. The anticipated cost savings are based upon assumptions about our ability to implement integration measures in a timely fashion and within certain cost parameters. Our ability to achieve the planned cost synergies is dependent upon a significant number of factors, some of which may be beyond our control. For example, we may be unable to eliminate duplicative costs in a timely fashion or at all. Our inability to realize anticipated cost savings, and revenue enhancements from the acquisition could have a material adverse effect on our business, financial condition, operating results, cash flows and growth prospects. (SAC ¶ 88; 3Q2014 Form 10-Q at 36.)

The Acquisition could divert the attention of management. (SAC ¶ 88; 3Q2014 Form 10-Q at 36.)

If we complete the Acquisition, we will be entering new lines of business that we lack experience managing. Similarly, because the Enterprise business is significantly larger than our existing business, we will be required to manage new and larger lines of business, and consequently the integration process will require significant attention from management, which may divert management's attention from our existing businesses. Management may also have difficulty assimilating the

- 10 -

corporate cultures, maintaining employee morale and retaining key employees. These diversions, together with other difficulties we may have integrating the Enterprise business, could have a material adverse effect on our business, financial condition, operating results, cash flows and growth prospects. (SAC ¶ 88; 3Q2014 Form 10-Q at 36.)

The integration is well underway. We actually obviously closed the transaction a couple weeks ago. One thing we are really excited about is we turned onto ERP systems -- is we had to clone what we acquired. And we turned it on, and it's functioning really well. I'm going to tell you that's not a small feat. But I think that's another testimony to the fact that we can execute well. So that's working well for us. (SAC ¶ 90; 11/11/2014 Industrial Conference at 7, Mot., Ex. 4, Dkt. No. 71-4.)

We are moving forward on plan with the integration, and we remain confident in our ability to achieve $150 million in cost synergies over two years.
                         * * *
We are on target to achieve the $150 million in synergies by the end of 2016, with $50 million to $75 million in savings this year. (SAC ¶ 93; 3/17/2015 Earnings Call at 7-8, Mot., Ex. 7, Dkt. No. 71-7.)

Since the enterprise acquisition closed on October 27, we have been very pleased with the progress of our integration efforts, and the resulting success. Since day one, we were able to book and ship product in quantity. Our employees are energized, and despite the complexities of the transaction, they have remained focused on serving our customers and partners, and growing the business. The two businesses are coming together quickly, with the goal of building an organization that is uniquely positioned to serve the visibility needs of partners and customers around the globe. The integration is progressing as planned.(SAC ¶ 95; 3/17/2015 Earnings Call at 5.)

We have already completed the integration of the sales force under Joe, and we have aligned the right people in the right roles. (SOC ¶ 97; 3/17/2015 Earnings Call at 5.)

During the quarter we also made material progress on
achieving our cost-synergy targets, pursuing growth
initiatives and integrating Zebra with the Enterprise
business acquired from Motorola Solutions in October.
(SAC ¶ 100; 5/13/2015 Press Release at 1, Mot., Ex. 9,
Dkt. No. 71-9.)

We also made meaningful progress on our synergy,
integration, and growth goals. . . . To date, we have
achieved $50 million in cost synergies on an annualized
basis, related to the acquisition. In addition to
completing the sales force consolidation, in order to
present a solid unified approach to the customer, we
have merged several facilities, rationalized part of our
supply chain organization, and achieved cost savings
from reducing the number of services provided under the
transition services agreement with Motorola. This
progress reinforces our confidence in our capacity to
meet or exceed our long-term growth, profit and debt
leverage objectives. (SAC ¶ 102; 5/13/2015 Earnings Call
at 4, Mot., Ex. 10, Dkt. No. 71-10.)

First-quarter EBITDA reflects good progress on our
synergy efforts, and we are close to our goal of
achieving an 18% to 20% EBITDA margin. To date, we have
captured approximately $50 million in run rate savings,
and remain on track to achieve our target of $150 million
of run rate synergies by the end of 2016. In addition,
we believe the potential exists to achieve even more
synergies beyond the two-year time frame. (SAC ¶ 104;
5/13/2015 Earnings Call at 6.)

We expect non-GAAP earnings for the second quarter in
the range of $1 to $1.25. This forecast assumes gross
margin in the range of 45.5% to 46.5%. (SOC ¶ 106;
5/13/2015 Earnings Call at 6.)

The case of *Makor Issues & Rights, Ltd v. Tellabs, Inc.*, 437

F.3d 588 (7th Cir. 2006), *vacated and remanded on other grounds*,

551 U.S. 308 (2007) is helpful in determining whether any of these

alleged statements can support a securities fraud claim. *Tellabs*

was a Section 10(b) fraud putative class action that addressed the

heightened pleading requirements of PSLRA. The Seventh Circuit noted that PSLRA requires two elements of securities fraud, falsity and materiality, be pleaded with special particularity, i.e., the complaint must specify each statement or omission that is false and why it is so. Where confidential sources are relied upon, they must be described with sufficient particularity "to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.* at 596 (citing *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)). Materiality exists where "an investor would reasonably rely" on the disclosure as one "reflecting a consequential fact about the company." *Id.* However, statements that are vaguely aspirational or puffery are not material and do not support a securities fraud claim. *Id.*

In analyzing Zebra's alleged statements, the Court reviews whether the statements are in fact misleading and, if so, whether they are material. Plaintiff first argues Paragraph 82 of the SAC, which states Zebra was "committed to . . . achieving 150 million in cost synergies" from the acquisition, is false because Zebra failed to consider the costs that tended to offset the benefits. (SAC ¶ 82.) However, the statement does not claim that synergistic benefits would be achieved without any one-time costs associated with the acquisition. Moreover, the Complaint does not allege that no synergistic benefits resulted. A reasonable investor would

expect many one-time costs associated with a massive acquisition such as Zebra's purchase of Motorola.

Plaintiff also claim the alleged statements in Paragraph 84, which announced that Zebra had completed the "complex cut-over" to the enterprise resource planning system in a short amount of time and had made "significant progress" towards integrating the enterprise businesses, were misleading and false. (SAC ¶ 84.) However, Plaintiff's interpretation of the statements appear to be out of context with the balance of the paragraph. In context, the "successfully completed complex cutover of the ERP systems" is directly tied to Zebra's ability to "take orders and ship products at volume from day one." (*Id.*) Rather than implying the ERP systems integration had been totally accomplished, the statement appears to reference the level of success that enabled Zebra to sell and ship products from "day one," i.e., the date of acquisition closure. (*Id.*) Plaintiff does not dispute Zebra's claim that it was able to sell and ship product, and the quarterly financials showing product sales volume support this statement.

The second sentence in Paragraph 84 is clearly puffery. *See Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995) (holding that "promotional phrase[s] used to champion the company but [are] devoid of substantial information" and "optimistic rhetoric" are "better described as puffery rather than as material statements of fact"). "Significant progress" is a subjective description and

"contains no useful information upon which a reasonable investor would base a decision to invest." *Id.* Similarly, the statements in Paragraph 90 regarding the Motorola ERP system "functioning really well" and "working well for us" are puffery, as each merely reiterates that Zebra was satisfied with the progress which enabled it to sell and ship product. (SAC ¶ 90.)

The language identified in Paragraphs 95 and 97 contain the same vague and optimistic rhetoric. In Paragraph 95, the company stated it was "very pleased" with the progress of integration, the two companies were coming together "quickly," and integration was "progressing as planned." (SAC ¶ 95.) In Paragraph 97, the company stated it had "completed the integration of the sales force and had aligned the right people in the right roles." (SAC ¶ 97.) These are subjective assessments and likewise puffery.

Plaintiff next claims Paragraphs 86 and 88 are inaccurate by omission. In Paragraph 86, Zebra states that "[o]perating expenses for the third quarter increased 52.2% . . . ." (SAC ¶ 86.) This is merely a factual statement regarding operating expenses in the third quarter. Plaintiff does not dispute the accuracy of the statement, likely because the operating expenses did increase. Plaintiff argues that Zebra did not go far enough and should have explicitly forecasted increased costs in the future. The statement, however, implies neither cost increases nor a lack of

cost increases in the future, and is therefore not false or misleading.

Plaintiff's argument regarding Paragraph 88 is similarly styled. The identified statements are from the company's 2014 Third Quarter Form 10-Q public filing and warn investors that Zebra "may be unable to effectively integrate" the two businesses post-acquisition. (SAC ¶ 88.) Again, Plaintiff's contend that the statements did not warn investors enough instead of pointing to any factual inaccuracy. The statements appear entirely accurate.

Paragraph 93, containing excerpts from a March 17, 2015, earnings call, states that Zebra "remained confident in our ability to achieve 150 million in cost synergies over two years" and that the company was "on target" to achieve cost savings for 2015. (SAC ¶ 93.) These statements are forward-looking and are subject to the PSLRA safe harbor provision. In addition, as noted above, the fact that there are cost synergies resulting from the acquisition does not appear to be disputed by Plaintiff. Rather, it is Plaintiff's position that the synergies were offset by the integration expenses.

Finally, the statements alleged in Paragraphs 100, 102 and 104 are neither false nor misleading. The company states it is making "material" and "meaningful progress on [their] synergy and integration goals" and had achieved cost savings. (SAC ¶¶ 100 & 102.) Such statements are clearly not false, and they lack any

objective factual content that could be relied upon by investors. To the extent that Zebra expressed it would continue with ERP integration activities beyond the two year target by mentioning a "potential exists to achieve even more synergies beyond the two-year time frame," while perhaps somewhat inconsistent with an earlier statement concerning completion of ERP integration, was was not falsely made, nor does Plaintiff dispute its inaccuracy. (SAC ¶ 104.)

The last statement in contention is Paragraph 106, which provides gross margin guidance for the second quarter of 2015. Plaintiff alleges that Zebra's announcement of gross margins for the second quarter missed by a total of 160 basis points, or 1.6%. Defendants excuse the failure by pointing to purchase accounting adjustments resulting from higher costs associated with the rebranding to Zebra products as well as "other costs not expected to recur." (2Q2015 Form 10-Q at 30, Mot., Ex. 14, Dkt. No. 71-14.) These adjustments account for 1.1% of the difference between the expected and actual margin. Zebra also attributed their second quarter results to the lower margins on Enterprise products as compared to Zebra products. (11/10/2015 Press Release at 3, Mot., Ex. 15, Dkt. No. 71-15.) Since this guidance was a forecast, it falls within the "safe harbor" provided by the PLRSRA. *Asher v. Baxterm*, 377 F3d 727, 734 (7th Cir. 2004)("The PSLRA does not require the most helpful caution; it is enough to identify

- 17 -

important factors that could cause actual results to differ materially from those in the forward-looking statement.")(citations omitted). Since the Court has failed to find any of the present tense statements made by Defendants to be fraudulent, Plaintiff cannot use them as evidence that Defendants knew their guidance was wrong when issued.

More importantly, Plaintiff has failed to demonstrate any motive that Defendants had to commit fraud. Any indication from Zebra that the integration was being accomplished painlessly would be shown to be false by the next financial disclosures of increased integration expenditures. There is no allegation that any of the Defendants made any sales or purchases of Zebra shares during the period in question which, if true, could provide a financial motive to issue misleading or inaccurate forecasts. *See City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 711 F.3d 754 (7th Cir. 2013). In this case, Judge Posner pointed out that there is a difference between the duty of truthfulness and the duty of candor. He then noted that there was no duty at all of total corporate transparency. *Id.* at 758–59. Through puffery, it may be that Defendants described the progress of the integration as rosier than was justified. However, nothing Defendants said or did amounted to a false statement made with scienter. Without a motive to defraud, a "strong inference" of the required state of mind is difficult to make. *Id.* at 756–57.

- 18 -

While a lack of motive is not dispositive on the issue of scienter, the Supreme Court has said that the court must assess all allegations "holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007). Specifically, the Court must review "all as true and taken collectively," and ask if a reasonable person would "deem the inference of scienter to be least as strong as an opposing inference." *Id.* Plaintiff has failed to so show here.

In summary, Zebra acquired the Motorola enterprise to create a business entity that would provide large cost synergies through combining two entities that provided different but complimentary products within the "internet of things." Zebra's original announcement optimistically touted the expected benefits to be derived while warning investors of the significant risks involved, including nonsuccess or increased costs.

Plaintiff's argument that Zebra gave unjustified rosy outlooks is based on its own subjective interpretation of Zebra's statements. When Zebra disclosed at the close of the class-period that integration had been neither as easy nor as cheap as could be expected from the periodic statements of Zebra personnel, Plaintiff claims the public was defrauded. However, as Judge Posner pointed out in *City of Livonia,* there is a difference between a duty of truthfulness and the duty of candor. A rosy outlook, also known as puffery, does not prove a lack of truthfulness on behalf

of the Defendants. At most, Defendants showed a lack of candor, which is insufficient to support a securities fraud case.

Northcoast Research's November 13, 2015, analysis on Zebra's failure to achieve its guidance on its gross margin puts the event in context:

> Shares of Zebra have taken a beating this week as management continues to confuse investors on the earnings calls despite putting up respectable numbers in a challenging environment. We believe these communication issues are weighing on the stock but will ultimately be corrected.
>
> We reiterate our BUY rating and $115 price target and suggest investors that have the patience to wait for the results will be rewarded in the long-run, but the short-term may be difficult. Those willing to buy now may be the biggest beneficiaries.

(11/13/2015 Northcoast Research at 2, Mot., Ex. 17, Dkt. No. 71-17.) This analysis has been borne out: as of this writing, the share price is currently trading at approximately four times the price at the end of the class period. NASDAQ, https://www.nasdaq.com/market-activity/stocks/zbra (last visited Oct. 15, 2020). These long-term results also demonstrate a lack of scienter on the part of Defendants.

Because Plaintiff failed to plead material misrepresentations by Zebra or the individual Defendants, as well as failed to meet the heightened pleading standards on Defendants' intent to deceive, Plaintiff's claims may not move forward.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion to Dismiss (Dkt. No. 69) is granted as to all Defendants.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 10/16/2020